**E-Filed 7/16/2012**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| TRENT WEST,<br><br>    Plaintiff,<br><br>    v.<br><br>QUALITY GOLD, INC.,<br><br>    Defendant. | CASE NO. 5:11-cv-02531-EJD<br><br>ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND<br><br>[Re: Docket Item No. 39] |

Defendant Quality Gold, Inc. ("Quality Gold") moves to dismiss the first amended complaint filed by Plaintiff Trent West ("West") for failure to state a claim under Fed. R. Civ. P. 12(b)(6). West filed opposition on May 16, 2012, and Quality Gold filed a reply on May 23, 2012. The Court held a hearing on June 29, 2012. Having considered the parties' submissions and argument and the relevant law, the Court hereby GRANTS the motion to dismiss, with leave to amend.

## I. BACKGROUND

West owns nine patents in the field of tungsten carbide jewelry finger rings. FAC ¶ 1. He alleges that since 2006 he has licensed his patented technology to "select" licensees and actively has

enforced his patent rights against infringers. *Id*. at ¶ 7. He claims that as a result, the jewelry finger ring industry has become highly sensitive to patent rights. *Id*.

West alleges that Quality Gold is a jewelry manufacturer[1] and wholesale distributor that supplies tungsten carbide jewelry finger rings to retailers and other customers in the United States. *Id*. at ¶ 8. Quality Gold sells its products under the trade name Dura Tungsten through catalogs and a website *Id*. In 2009, Quality Gold began advertising its tungsten jewelry finger rings as "patent pending." In 2010, Quality Gold changed its catalogs to state that "patent pending USPTO 12,141,791 was granted." *Id*. West alleges that Quality Gold intended to represent that it holds patent rights to Dura Tungsten products, a "lighter" tungsten carbide ring. *Id*. ¶ 10. He asserts that "[b]y claiming its pending patent 'was granted' Quality Gold conveys to the buying public and competitors that it holds the exclusive lawful rights to sell its products and that all others including West's licensees are excluded from lawfully selling similar products." *Id*. In fact, no such patent had issued. *Id*. ¶ 11. According to West, Quality Gold submitted a *patent application* No. 12,141,791, which was *published* – not granted – in December 2009. *Id*. West alleges that Quality Gold simply fabricated the existence of an issued patent. *Id*.

West filed the present action in May 2011, asserting a single *qui tam* claim under 35 U.S.C. § 292, which at that time included "a *qui tam* provision that allowed any private individual to sue manufacturers who labeled their products with false or expired patent numbers 'for the purpose of deceiving the public.'" *Brooks v. Dunlop Manufacturing Inc.*, No. C-10-04341-CRB, 2011 WL 6140912, at *1 n.1 (N.D. Cal. Dec. 9, 2011). Subsequently, amendment to § 292 eliminated the *qui tam* provision relied upon by West. *Id*. at *4. This Court dismissed West's *qui tam* claim but it granted leave to amend so that West could attempt to plead a viable claim under the statute's new subsection providing that "[a] person who has suffered a competitive injury as a result of a violation

---

[1] Although West alleges expressly that Quality Gold is a jewelry manufacturer, West's opposition brief concedes that Quality Gold is not a manufacturer, Opp. at 10, and Quality Gold's reply brief asserts that it does not manufacture jewelry but "simply resells jewelry purchased from its supplier," Reply at 8. The Court must accept the facts as alleged in the FAC. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the inaccurate characterization of Quality Gold as a manufacturer does not affect the analysis set forth herein. West should correct this error in the event that he files an amended pleading.

2
CASE NO. 5:11-cv-02531-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury." 35 U.S.C. § 292(b).

In response to the Court's order, West filed a FAC alleging claims for: (1) false marking under § 292(b); (2) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) violation of California false advertising law, Cal. Bus. & Prof. Code § 17500; and (4) violation of California unfair competition law, Cal. Bus. & Prof. Code § 17200.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). For purposes of evaluating a motion to dismiss, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

However, mere conclusions couched as factual allegations are not sufficient to state a claim. *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *McGlinchy v. Shell Chem. Co.,* 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). Thus, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009).

## III. DISCUSSION

### A. False Marking Under 35 U.S.C. § 292 (Claim 1)

Claim 1 asserts false marking under 35 U.S.C. § 292, which in relevant part provides that, "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose

3

of deceiving the public," may be sued for damages by a person who suffers a "competitive injury" as a result of the false marking. 35 U.S.C. § 292(b). Quality Gold argues that the claim fails to allege facts showing an intent to deceive the public or a "competitive injury."

### 1. Intent to Deceive

Because a false marking claim requires an intent to deceive the public, and sounds in fraud, it "must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which provides that 'a party must state with particularity the circumstances constituting fraud or mistake.'" *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (9th Cir. 2011) (quoting *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011)). "Rule 9(b) requires a plaintiff to plead in detail the specific who, what, when, where, and how of the alleged fraud." *Id*. (internal quotation marks and citation omitted).

As an initial matter, the Court addresses West's argument that his scienter allegations were deemed sufficient in the last round of motion practice and thus that Quality Gold's current challenge to those allegations is inappropriate. In fact, the Court has not previously considered West's scienter allegations. West's original complaint asserted a single *qui tam* claim under a prior version of § 292. By the time Quality Gold's motion to dismiss that claim was heard, the *qui tam* provision had been omitted from the statute. However, a new provision had been added, providing a private right of action to persons who suffer a "competitive injury" as a result of false marking. 35 U.S.C. § 292(b). At the hearing on Quality Gold's motion to dismiss the original complaint, the Court inquired of West's counsel whether he intended to assert a competitive injury claim under the new provision. Counsel responded that he believed the allegations in the complaint were sufficient to make out a claim for competitive injury, but that he could allege additional facts in support of such a claim. The Court's order reflected its conclusion that such additional facts were necessary as a substantive matter, and that amendment was desirable as a procedural matter because the claim was framed as a *qui tam* action. Under these circumstances, the Court did not deem it necessary or appropriate to opine as to the adequacy of any future claim that West might bring under new § 292(b). Accordingly, Quality Gold is not precluded from challenging West's scienter allegations in its present motion to dismiss.

4

CASE NO. 5:11-cv-02531-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Turning to the substance of that challenge, the law is clear that "a pleading that simply avers the substantive elements of a claim sounding in fraud or mistake, without setting forth the particularized factual bases for the allegations, does not satisfy Rule 9(b)." *In re BP Lubricants*, 637 F.3d at 1311 (citing *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009)). These pleading standards "must be applied in a fashion that relates to false marking claims." *Id*. at 1312. For example, a plaintiff may allege the identities of the individuals at the defendant company who knew that a particular patent used to mark products had expired, or alternatively may set forth other "facts upon which intent to deceive can be reasonably inferred." *Id*. Such facts might include "that the defendant sued a third party for infringement of the patent after the patent expired or made multiple revisions of the marking after expiration." *Id*.

West argues that an intent to deceive may be inferred from the fact that Quality Gold changed its catalogs to reflect that a patent had been *granted* when in fact the patent application in question merely had been *published*. He points to the FAC's allegation that in December 2009, the US Patent and Trademark Office ("PTO") issued an action stating on its face "Patent Application *Published*," (emphasis added), and that as a result Quality Gold "knew or reasonably should have known" that no patent had been *issued*. FAC ¶¶ 11, 15. This is the extent of West's scienter allegations; he does not allege the identities of those individuals at Quality Gold who knew that no patent had issued, or any other facts from which such knowledge on the part of Quality Gold could be inferred.

In *BP Lubricants*, the Federal Circuit rejected allegations similar to West's, in which the plaintiff asserted that the defendant must have known its patent had expired because it was a "sophisticated company and ha[d] experience applying for, obtaining, and litigating patents." *BP Lubricants*, 637 F.3d at 1312. The court concluded that the plaintiff's "bare assertion provides no more of a basis to reasonably distinguish a viable complaint than merely asserting the defendant should have known the patent expired." *Id*. It noted further that "[c]onclusory allegations such as this are not entitled to an assumption of truth at any stage in litigation." *Id*. The court also rejected the plaintiff's argument that the false marking, itself, was sufficient to show scienter. *Id*. While it

5

recognized that "certain statements are such that, to show them false, is normally to show scienter,"[2] *id.*, the court concluded that marking with an expired patent did not constitute such a statement. *Id*. West's allegations present a slightly more compelling case, because Quality Gold is not alleged to have continued marking with an expired patent, but to have marked with a patent that never existed. However, the argument that Quality Gold's intent may be deduced from the mark itself is not distinguishable in any meaningful way from the argument rejected by the court in *BP Lubricants*. Accordingly, the Court concludes that West's § 292(b) claim does not satisfy the requirements of Rule 9(b).

The Court notes that West has asserted a number of facts, in his opposition brief and during oral argument, that are not pled in the FAC. Incorporation of those facts into an amended complaint may cure the pleading deficiencies discussed above, particularly as the Court views Quality Gold's motion as presenting a close call. For example, at oral argument West's counsel discussed the history of West's patent enforcement efforts in the area of tungsten jewelry finger rings, West's interactions with particular persons associated with Quality Gold, and the manner in which a patent application is processed by the PTO in far more detail than is provided in the FAC. Inclusion of these facts in the pleading may give weight to West's assertions that Quality Gold intentionally tried to deceive the market in order to gain a competitive advantage. Additionally, West's brief states that the layout of Quality Gold's advertising looks as follows:

> The Dura Tungsten band was developed in 2006.
> Patent Pending USPTO 12,141,791 was granted
> and published in December 2009 worldwide.

According to West, isolating the line "Patent Pending USPTO 12,141,791 was granted" draws the reader's eye to the word "granted" and leaves an impression that a patent in fact has been granted. The layout of the catalog text is not alleged in the FAC.

Because the FAC represents West's first attempt to plead a claim under § 292(b), and because it appears that West could allege additional facts if given leave to do so, Claim 1 is DISMISSED, WITH LEAVE TO AMEND.

---

[2] The court offered as an example the statement, "I am not married," by one who is married. *In re BP Lubricants*, 637 F.3d at 1312.

### 2. Competitive Injury

The Ninth Circuit has not yet defined "competitive injury" in the context of § 292(b). One district court within this circuit has interpreted the phrase "as requiring that a plaintiff allege the defendant's false marking was harmful to the plaintiff's ability to compete with the defendant." *McCabe v. Floyd Rose Guitars*, No. 10CV581 JLS (JMA), 2012 WL 1409627, at *7 (S.D. Cal. Apr. 23, 2012). Another has concluded that in order to sue under this section the plaintiff and the defendant must be "competitors." *Brooks v. Dunlop Mfg., Inc.*, No. C 10- 04341 CRB, 2011 WL 6140912, at *4 (N.D. Cal. Dec. 9, 2011). "Competitors" in this context has been defined as those who "vie for the same dollars from the same consumer group." *Ira Green, Inc. v. J.L. Darling Corp.*, No. 3:11–cv–05796–RJB, 2011 WL 6218146, at *4 (W.D. Wash. Dec. 5, 2011) (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011)). Finally, "competitive injury" has been defined as, "predatory pricing, price discrimination, injury to competition, or loss of business opportunities." *Seirus Innovative Accessories, Inc. v. Cabela's Inc.*, No. 09-CV-102 H (WMC), 2011 WL 6400630, at *4 (SD Cal. Oct. 19, 2011).

Quality Gold reads the latter case, *Seirus*, as holding that a § 292 plaintiff must be at the same level in the distribution chain as the defendant in order to state a competitive injury. In *Seirus*, the § 292 claimant, Cabela's, sold products at the retail level through stores, catalogs, and a website, while Seirus sold products to distributors and retailers. The court granted summary judgment for Seirus on the § 292 claim, concluding that Cabela's had failed to show that the alleged false marking had caused it to pay more for products, reduced its purchase options, or resulted in money damages. *Id*. at *4. The court also concluded that Cabela's had not demonstrated that it was in a competitive relationship with Seirus. *Id*. The present case is distinguishable from *Seirus*, in that West claims money damages and lost business opportunities resulting from Quality Gold's conduct. Specifically, West alleges that its licensees are direct competitors of Quality Gold, FAC ¶ 1, and that Quality Gold's false marking has resulted in lost royalty shares of sales and lost licensing opportunities, *id*. ¶ 17.

At least one appellate court has held that two parties may be considered "competitors" for purposes of a Lanham Act claim even though one is a retailer and the other a wholesaler, so long as

7

"the goods they sell are in direct competition in the marketplace." *Famous Horse, Inc. v. 5th Avenue Photos, Inc.*, 624 F.3d 106, 113-14 (2d Cir. 2010). In *Famous Horse*, the plaintiff sold brand-name jeans at the retail level while the defendant sold counterfeit jeans to competing retailers. The court held that because the defendants' counterfeit jeans were "supplied to retailers in direct competition with" the plaintiff, the parties were competitors.

Given the lack of clarity with respect to the term "competitive injury" as it is used in § 292(b), the *Famous Horse* case, and that fact that West alleges specific injury arising from Quality Gold's alleged use of the false mark, the Court concludes that West has satisfied the "competitive injury" requirement for pleading purposes.

**B.  False Advertising Under 15 U.S.C. § 1125(a) (Claim 2), False Advertising Under Cal. Bus. & Prof. Code § 17500 (Claim 3), and Unfair Competition Under Cal. Bus. & Prof. Code § 17200 (Claim 4)**

Quality Gold contends that West's remaining claims, asserted under federal and state advertising law, and state unfair competition law, are preempted by § 292. There does not appear to be any controlling authority directly on point. Courts within this district have found preemption with respect to claims based solely upon the same conduct that gives rise to a § 292 false marking claim. *See, e.g.*, *Champion Labs., Inc. v. Parker-Hannifin Corp.*, No. 1:10–CV–02371–OWW–DLB, 2011 WL 1883832, at *12 (E.D. Cal. May 17, 2011). Preemption may not apply if the claims in question allege "bad faith" conduct. *Id*. Even assuming that this is so, however, West has not alleged facts giving rise to an inference of bad faith. Although he asserts that Quality Gold simply "made up" a patent number, FAC ¶ 11, West has failed to allege facts sufficient to show that Quality Gold advertised the allegedly false mark knowingly or with an intent to deceive. Accordingly, Claims 2, 3, and 4 are DISMISSED, WITH LEAVE TO AMEND.

## IV. ORDER

Good cause therefor appearing, the motion to dismiss is GRANTED WITH LEAVE TO AMEND; any amended pleading shall be filed on or before August 15, 2012.

Dated: July 16, 2012

_____
EDWARD J. DAVILA
United States District Judge

8

CASE NO. 5:11-cv-02531-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND